## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| SUNIL GUPTA, M.D., LLC ) | |
| *d/b/a Retina Specialty Institute*, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:17-00136-KD-N** |
| ) | |
| WRIGHT B. LAUTEN, ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATIONS

This action is before the Court on the motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, to abstain or stay (Doc. 12) filed by Defendant Wright B. Lauten. The Court has referred the motion (Doc. 12) to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (5/1/2017 electronic referral).

Plaintiff Sunil Gupta, M.D., LLC, d/b/a Retina Specialty Institute ("RSI") has timely filed a response (Doc. 17) in opposition to the motion, and Lauten has timely filed a reply (Doc. 18) to the response.[1] The motion is now under submission (*see* Doc. 14) and is ripe for disposition.[2] Upon consideration, the undersigned

---

[1] The motion and all related briefing and exhibits have been filed under seal pursuant to the Court's May 1, 2017 Order (Doc. 13).

[2] The motion was taken under submission May 23, 2017. (See Doc. 14). On September 11, 2017, the undersigned ordered the parties to file a joint status report "advising the Court of the current status of the underlying state court action and whether any issues raised in the Defendant's pending motion to dismiss, abstain or stay (Doc. 12) have been rendered moot or otherwise impacted by developments in the state court action." (Doc. 21 at 1). The parties timely complied on September 18, advising that none of the reported developments in the underlying state court action and audit appeal proceedings "have rendered Dr. Lauten's motion to dismiss,

**RECOMMENDS** that Lauten's motion to dismiss, abstain, or stay (Doc. 12) be **DENIED**.

## I.    *Background*

RSI initiated this action by filing a Complaint for Declaratory Judgment (Doc. 1) with the Court.   The one-count Complaint, brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeks a declaration of rights and other legal relations concerning a settlement agreement entered into between RSI and Lauten to resolve state court litigation between the two parties (hereinafter, "the Settlement Agreement").[3]   More specifically, RSI seeks a "declaratory judgment that Lauten is

---

abstain or stay moot, or otherwise impact the pending motion" and that the parties "maintain their respective positions with regard to Defendant's motion to dismiss." (Doc. 22 at 2).

[3]     "Of course, it is well established that the Declaratory Judgment Act does not, of itself, confer jurisdiction upon federal courts."   *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861–62 (11th Cir. 2008).   RSI alleges that this Court has original jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(1).   RSI, a limited liability company (i.e., an unincorporated artificial entity) alleges that its "members are citizens of Alabama and Florida."   (Doc. 1 at 1, ¶ 1).   Though RSI's complaint does not identify the members, its disclosure statement (Doc. 6) identifies four natural persons as its "sole members." Accordingly, for purposes of diversity, RSI is a citizen of Alabama and Florida.   The complaint further alleges that Lauten, a natural person, is "domiciled in," and is thus deemed a citizen of, Mississippi.   (Doc. 1 at 1, ¶ 2)   Finally, the complaint alleges that the amount in controversy "exceeds $75,000.00, exclusive of interest and costs" (*id.* at 2, ¶ 4), and other factual allegations plausibly indicate the amount in controversy is $230,451.56.   *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) ("In order to invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000. When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." (citations and quotation omitted)).

Lauten challenges none of these allegations, and the undersigned currently finds no reason to question them *sua sponte*.   Accordingly, RSI has met its burden of

responsible for (i) any recoupment, refunds, or offsets to the Medicare Program to the extent the integrity audit conducted by AdvanceMed Corporation ('AdvanceMed') results in a repayment, recoupment, or offset to C[enters for Medicare & Medicaid Services ('CMS')] for services rendered by Lauten to Medicare beneficiaries, and (ii) all of the costs of defending that integrity audit, including all costs associated with appealing the AdvanceMed's audit determination."   (Doc. 1 at 2, ¶ 3).

Per the well-pleaded allegations in RSI's complaint, under § 1893 of the Social Security Act (42 U.S.C. § 1395ddd) and Title II, § 202 of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), CMS is authorized to contract with entities to fulfill program integrity functions for the Medicare program. These entities are called Zone Program Integrity Contractors ("ZPIC"). AdvanceMed is the ZPIC for Medicare Part B services in Mississippi. As the ZPIC, AdvanceMed performs program integrity activities aimed to reduce fraud, waste, and abuse in the Medicare program.

On or about May 16, 2016, AdvanceMed opened an investigation into Lauten based on a proactive data analysis. On or about August 1, 2016, AdvanceMed submitted a written request seeking medical records for a statistically valid random sample of claims with dates of service from January 1, 2014, through May 31, 2016. A follow-up records request was also sent on or about December 15, 2016, concerning one of the claims under review.

---

pleading sufficient facts showing original jurisdiction under § 1332(a)(1).   *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

On or about November 23, 2016, Lauten brought a state court action in the Circuit Court of Mobile County, Alabama, Case No. 02-CV-2016-902495 (hereinafter, "the State Court Action"), asserting numerous claims against RSI and the individual members of RSI (collectively, the "RSI Group"). In an effort to resolve those claims, Lauten and the RSI Group entered into settlement negotiations. In order to fully resolve all claims between them, on or about January 5, 2017, Lauten and the RSI Group entered into the Settlement Agreement. Following the execution of the Settlement Agreement, on January 18, 2017, all claims between Lauten and the RSI Group were dismissed with prejudice.

The Settlement Agreement explicitly recognized and carved out from the release of claims any "repayment, recoupment, or offset" to Medicare resulting from the ongoing AdvanceMed integrity audit relating to medical services rendered by Lauten during his employment with RSI. Section F.9 of the Settlement Agreement provided in relevant part that:

> RSI and Dr. Lauten shall cooperate with each other in the defense of the ongoing ZPIC financial audit. RSI will not take a position adverse to Dr. Lauten with respect to that audit. Dr. Lauten will not take a position adverse to RSI. To the extent the ZPIC financial audit results in a repayment, recoupment, or offset to Medicare for the Hattiesburg practice and/or for Dr. Lauten's services, Dr. Lauten will be responsible for any recoupments, refunds, or offsets owed to the Medicare program, also recognizing that, in accordance with Section E.9 above, Dr. Lauten does not waive any rights or defenses he may have with respect to any violation or breach. Dr. Lauten will not be responsible for any recoupments, refunds or offsets that are attributable to other RSI doctors or practices.

On or about January 24, 2017, AdvanceMed notified Lauten that he had been overpaid by CMS in the amount of $230,451.65. Specifically, AdvanceMed notified Lauten (i) that it had identified "numerous billing errors," (ii) that "documentation

did not support medical necessity" and (iii) certain high reimbursement CPT codes "were often billed at each visit for each beneficiary, regardless of the condition being treated, or a change in the patient's symptoms or examination."   On or about February 2, 2017, Novitas Solutions, Inc. ("Novitas"), the Medicare Administrative Contractor for the State of Mississippi, instituted the overpayment process by sending RSI a demand letter.   The demand letter requested payment in the amount of $230,451.56 by March 3, 2017.   The demand letter further indicated that interest would begin to accrue if RSI did not repay the full amount of the overpayment by March 3, 2017.

On or about March 3, 2017, at the request of Lauten, RSI submitted a request for redetermination to Novitas regarding the repayment. By submitting the request for redetermination, RSI will seek an independent re-examination of AdvanceMed's overpayment determination.  Lauten is now taking the position that he is not responsible for any recoupment, refunds, or offsets resulting from the AdvanceMed integrity audit and instead contends that RSI is entirely and solely responsible for any such recoupment, refunds, or offsets.

## II.   *Analysis*

### a.   Rule 12(b)(1) Dismissal

Lauten argues that this action is due to be dismissed under Rule 12(b)(1) because the Settlement Agreement contains a provision that is, at most, a forum-selection clause.[4]  "[M]otions to dismiss based upon forum-selection clauses

---

[4] The provision is quoted on page 2 of the supplemental memorandum attached

ordinarily are not properly brought pursuant to Rule 12(b)(1), which permits motions to dismiss for lack of subject matter jurisdiction, because the basis upon which the defendants seek dismissal—namely, that the agreement of the parties prohibits the plaintiff from bringing suit in the particular forum—is unrelated to the actual basis of federal subject matter jurisdiction—namely, federal question jurisdiction or diversity of citizenship, as the case may be." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1289 (11th Cir. 1998).

Previously, the law of this Circuit was that "motions to dismiss upon the basis of choice-of-forum…clauses are properly brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue." *Id.* at 1290. *Accord Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1333 (11th Cir. 2011) ("Rule 12(b)(3) is the proper avenue for a party's request for dismissal based on a forum-selection clause."); *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1238 (11th Cir. 2012) ("We treat a dismissal based on a forum-selection clause as a question of proper venue under Federal Rule of Civil Procedure 12(b)(3)."). However, "in *Atlantic Marine Construction Co. v. United States District Court*, 571 U.S. ——, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013),…the Supreme Court declared that a motion to dismiss for *forum non conveniens*, and not a Rule 12(b)(3) motion for improper venue, is the appropriate means to enforce a valid forum-selection clause if that clause requires the dispute to be litigated in a non-federal forum." *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 964 (11th Cir. 2014) (per curiam)

hereto and filed under seal. *See infra* n.4.

(unpublished).

Because Lauten has failed to show that he is due relief under Rule 12(b)(1), and because he fails to address the issue of *forum non conveniens* at all, the undersigned finds that his Rule 12(b)(1) motion to dismiss is due to be **DENIED**.

### b.    Discretionary Abstention

Lauten next argues that the Court should defer to a parallel state court action by abstaining from exercising jurisdiction over this declaratory judgment action.

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton*[ *v. Seven Falls Co.*], 515 U.S. [277,] 287, 115 S. Ct. 2137[, 132 L. Ed. 2d 214 (1995)] (citations omitted).   It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so.   *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942).   In fact,…the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S. Ct. 1173. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.

> Guided by these general principles expressed by the Supreme Court, as well as the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts, [the Eleventh Circuit has] provide[d] the following factors for consideration to aid district courts in balancing state and federal interests.

>> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

[This] list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005) (per curiam) (footnotes and some quotation marks omitted).

As the parties' briefs indicate, there is hot disagreement even over the existence a parallel state court action.  As detailed in the separate supplemental memorandum attached to this Report and Recommendations, which has been filed

under seal pursuant to the Court's May 1, 2017 Order (Doc. 13),[5] answering this question would require delving into the complexities of state civil procedure and could be disruptive of the potential parallel proceeding. Because it is not clear at this time whether there is even a pending state court action to which this Court may defer through abstention, the undersigned is of the opinion that the Court should deny *Brillhart/Wilton* abstention as requested in the present motion, without addressing any of the *Ameritas* factors. Accordingly, the undersigned finds that Lauten's motion to abstain is due to be **DENIED**

### c.   Stay

Absent dismissal or abstention, Lauten's final alternative request is that the Court stay this action under its "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). *Accord Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000) (per curiam) ("A variety of circumstances may justify a district court stay pending the resolution of a related case in another court. A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." (citing *Clinton*, 520 U.S. at 706)).[6]   "[T]he power to stay proceedings is

---

[5] Like the present motion and its associated briefing and exhibits, the supplemental memorandum contains discussion of records that have been sealed by order of the Mobile County Circuit Court.

[6] More specifically, Lauten moves to stay "pursuant to" this Court's decision in *Defenders of Wildlife v. Minerals Management Service*, Civil Action No. 10-0254-WS-C, 2010 WL 3522399, at *1–2 (S.D. Ala. Aug. 31, 2010) (Steele, C.J.).

incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.   How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."   *Landis*, 299 U.S. at 254–55.   However, "[w]hen a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the district court must limit properly the scope of the stay. A stay must not be immoderate."   *Ortega Trujillo*, 221 F.3d at 1264 (quotation marks omitted).

For the reasons more fully detailed in the sealed supplemental memorandum attached hereto, the undersigned finds that a stay of these proceedings is not warranted based on the present motion and thus finds that Lauten's motion to stay is due to be **DENIED**.

### III.   *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Lauten's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, to abstain or stay (Doc. 12) be **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything

---

(*See* Doc. 12 at 17).   Because "[t]he opinion of a district court carries no precedential weight, even within the same district[,]" *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam), the undersigned presumes that Lauten moves to stay based on the reasoning in *Defenders of Wildlife*, which applied *Clinton, Ortega Trujillo*, and related cases.

in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 28th day of September 2017.

          */s/ Katherine P. Nelson*
          **KATHERINE P. NELSON**
          **UNITED STATES MAGISTRATE JUDGE**